Argued and submitted June 4, 1998, affirmed March 17, petition for review allowed July 27, 1999 (329 Or 287)

# TIDEWATER BARGE LINES, INC.,
*Appellant,*

*v.*

# OREGON ENVIRONMENTAL QUALITY COMMISSION
and Oregon Department of
Environmental Quality,
*Respondents.*

## (96C-13702; CA A98545)

974 P2d 807

Henry C. Breithaupt argued the cause for appellant. With him on the opening brief were David E. Filippi, Keith M. Garza and Stoel Rives LLP.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondents. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong, Judge, and Warren, Senior Judge.

WARREN, S. J.

Armstrong, J., dissenting.

## WARREN, S. J.

Petitioner appeals the trial court's dismissal of its petition for review of an order of the Environmental Quality Commission (EQC) that denied petitioner's request for a pollution control facilities tax credit for double hulling one of its barges. The court held that the petition for review was untimely. Petitioner argues that the petition was timely and that, if it was not, EQC violated its right to due process by including incorrect information about the filing deadline in its order. We affirm.

EQC issued its order denying petitioner's request for a tax credit on August 30, 1996, as a final order in other than a contested case. The last paragraph of the order stated:

"If Tidewater Barge wishes to seek judicial review of this order, it must file a petition with the appropriate circuit court within 60 days of service of this order. ORS 183.484."

EQC served the order by mail on September 9, 1996; petitioner filed this petition on November 6, the 58th day after service.[1] The filing, thus, was timely if the EQC's statement was correct. The difficulty arises from what is claimed to be an apparent conflict in the applicable statutes as to the time for filing a petition for review.

ORS 468.110 provides that any person aggrieved by an order of EQC "may appeal from such order in accordance with the provisions of ORS 183.310 to 183.550." ORS 183.484(2) provides that a person who challenges an order in other than a contested case must file a petition for review with the appropriate circuit court within 60 days after service of the challenged order. Those statutes are the basis for EQC's statement of the time period for seeking judicial review. It apparently overlooked ORS 468.170(3), which establishes a different time limit for applications for pollution control facilities tax credits. That statute first permits an

---

[1] According to petitioner, it did not engage its present attorneys or, apparently, any attorneys with regard to this application until more than 30 days after the service of the order rejecting the application.

applicant to challenge a rejection of an application by appealing "from the rejection as provided in ORS 468.110," thus expressly tying the challenge to review under the Administrative Procedures Act (APA). The statute then goes on to provide that the "rejection * * * is final and conclusive on all parties unless the applicant takes an appeal therefrom as provided in ORS 468.110 *before the 30th day after notice was mailed* by the commission." (Emphasis added.) As a result, ORS 468.170(3) provides 30 fewer days to file a petition challenging the denial of a pollution control facilities tax credit than ORS 183.484(3) provides for administrative reviews in general. The trial court dismissed the petition as untimely because it concluded that ORS 468.170(3) controls.

Petitioner argues that ORS 183.484(2) impliedly repealed the portion of ORS 468.170(3) that limits the period for seeking review to 30 days. It points out that the legislature adopted the general 60-day period for orders in noncontested cases *after* it adopted the 30-day period for review of the rejection of an application for a pollution control facilities tax credit. The history of the relevant statutes shows that a denial of a tax credit was reviewable under the APA, with a special 30-day time period for seeking review both before and after the charges on which petitioner relies.

Before 1971, the APA provided a method for seeking judicial review *only* of orders in contested cases. Under ORS 183.480(1) (1969), "[e]xcept as otherwise provided specifically by statute," any party to an agency proceeding who was aggrieved by a final decision in a contested case could seek judicial review in the appropriate circuit court. The party seeking review had 60 days following entry of the decision to file the petition. ORS 183.480(2) (1969). Despite the general limitation of APA review to contested cases, however, *former* ORS 449.090 (1969), which is now ORS 468.110, provided for appeal of an EQC order by action or suit *in accordance with the APA*, except that, when such review was not available because the person aggrieved was not a party to the original proceeding, the court could review any order or determination of EQC in an action for declaratory or injunctive relief or some other suitable proceeding. The statute did not limit this appeal right to orders in contested cases. *Former* ORS 449.635(1) (1969), which is now ORS 468.170, permitted

an applicant to appeal a rejection of a pollution control facilities tax credit as provided in *former* ORS 449.090, and thus under the APA. It also provided that the rejection of application was final and conclusive unless the applicant filed the appeal within 30 days after EQC mailed notice of the rejection. Thus, the statutes allowed for APA review with a 30 rather than 60-day period with which to seek that review.

In 1971, the legislature extensively amended ORS 183.480. Among other things, it changed review of contested cases from the circuit court to the Court of Appeals and, for the first time, provided generally for judicial review of orders in other than contested cases, giving jurisdiction over them to the appropriate circuit court. It also deleted the introductory statement that the provisions of ORS 183.480 applied "[e]xcept as otherwise provided specifically by statute[.]" Finally, the time for filing the petition for review became 60 days from the service of the challenged order instead of 60 days after the entry of the order. Or Laws 1971, ch 734, § 18. There have been a number of amendments to the APA since 1971, including the creation of separate sections for judicial review of contested cases (ORS 183.482) and of noncontested cases (ORS 183.484), but none of the amendments affects the time for filing the petition for review.[2]

Petitioner argues that the adoption in 1971 of the 60-day period for filing petitions for review in noncontested cases impliedly repealed the 30-day period for appealing the rejection of an application for a tax credit, because the two periods are inconsistent and the 60-day period was adopted later. It relies on two cases in which we held that the APA had impliedly repealed preexisting *methods* of seeking judicial review of administrative actions.

In *School Dist. No. 48 v. Fair Dis. App. Bd.*, 14 Or App 35, 512 P2d 799 (1973), the plaintiff challenged a decision of the Fair Dismissal Appeals Board by writ of review. The Board argued that the APA provided the exclusive method for seeking review of its decisions. There were two

---

[2] Similarly, none of the amendments to ORS 468.110 or ORS 468.170 or their predecessors since 1971 affects the time for seeking review of a rejection of an application for a pollution control facilities tax credit or the procedural route for doing so.

relevant 1971 statutes. First, the statute that created the Board expressly provided for review by writ of review. Second, the revision of the judicial review portions of the APA expressly provided that APA review was the sole method for reviewing agency final orders. As previously noted, that revision also eliminated the introductory phrase "[e]xcept as otherwise specifically provided by statute" from ORS 183.480(1). The Supreme Court had previously relied on that phrase in holding that a dismissed state police officer had to challenge the dismissal by writ of review rather than by judicial review under the APA. 14 Or App at 37-41, *citing Wampler v. Dept. of State Police*, 224 Or 439, 355 P2d 238 (1960).

In deciding whether a writ of review was available to challenge a decision of the Board, we first noted academic criticism of reviewing administrative action by the extraordinary writs. We then pointed out that the provision for reviewing the Board's decisions by writ of review was carried over from a predecessor statute and did not appear to reflect any legislative recognition of the concurrent changes to the APA. It was also clear that the legislature intended to subject administrative decisions in general to review under the APA rather than by extraordinary writ. 14 Or App at 41-43.

The two provisions at issue in *School Dist. No. 48* established inconsistent paths for seeking review of a Board order. The conflict between them was inescapable. In deciding which provision controlled, we suggested that the legislature intended to follow the academic commentary and to move away from using the writ of review in administrative cases. However, we did not overtly rely on our understanding of the legislative purpose to resolve the conflict. Rather, we adopted by analogy the rule that, when the legislature at the same session adopts two acts that amend the same statute in inconsistent ways, the one filed later in the Secretary of State's office controls. *See former* ORS 174.050 (*repealed by* Or Laws 1983, ch 740, § 41). Because the amendments to the APA were filed in the Secretary of State's office two days after the statute that created the Board, the APA governed and review was solely according to its provisions. 14 Or App at 43-44.

In *League of Women Voters v. Lane Co. Bndry Comm.*, 32 Or App 53, 573 P2d 1255, *rev den* 283 Or 503 (1978), the second case on which petitioner relies, the petitioners brought a writ of review challenging a decision of the defendant, a state agency, concerning a local government boundary change. At the time, ORS 199.461(3), as amended in 1971, provided for review of a boundary commission order under the writ of review statutes. At the same time, ORS 34.040, as amended in 1973, one of the statutes governing writs of review, provided that the writ was available to challenge decisions of inferior bodies "other than an agency as defined" in the APA. Based on those statutes, the defendant argued that APA review was exclusive and that the 1973 amendment to ORS 34.040 impliedly repealed the portion of ORS 199.461(3) that gave the trial court jurisdiction by writ of review. We concluded, without extended analysis, that the two provisions were inconsistent and that the defendant was correct. We therefore dismissed the appeal and vacated the trial court judgment that had decided the case on the merits.

■     Petitioner argues that the statutory distinction between the 30- and 60-day periods for seeking the same kind of judicial review of different decisions is comparable to the conflicts in *School Dist. No. 48* and *League of Women Voters* between two different methods of obtaining different kinds of judicial review of the same decision. That argument, which the dissent essentially accepts, ignores the context of our previous cases and the distinction between statutes that are in total conflict and statutes that, while they may establish different rules for different situations, are capable of working together.

The cases on which petitioner relies involved the first issue in any judicial review: which court, if any, had jurisdiction over the case. Under the statutes, there could be only one resolution to that question: the petitioner had to proceed either by writ of review or under the APA. Here, on the other hand, it is clear that the procedure for reviewing EQC's decision is by a petition for review in the circuit court under ORS 183.484. The APA and ORS 468.110 agree on that point, and ORS 468.170(3) does not call it into question.

The difference between the statutes is the time limit for invoking the circuit court's unquestioned jurisdiction by an unquestioned method. The two statutes can operate consistently. A petition for review of the denial of a pollution control facilities tax credit must be filed within 30 days of a denial; a petition for review of other uncontested cases must be filed within 60 days. In either case, a petition filed within 30 days after service of the order will be timely. There is no conflict between the statutes; the legislature could decide to assign different filing times for cases involving different matters.

In arguing otherwise, petitioner and the dissent place excessive emphasis on, and misunderstand the effect of, the 1971 amendment to ORS 183.480(1)(a). Before the amendment, the statute provided:

> "*Except as otherwise provided specifically by statute*, any party to an agency proceeding aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, is entitled to judicial review thereof under ORS 183.310 to 183.510." (Emphasis added.)

The amendment, among other things, deleted the italicized phrase. What that change means is that *all* administrative review now occurs under the APA, not under an extraordinary writ or other special proceeding. That did not change the method of reviewing denials of pollution control facilities tax credits. There was APA review of those decisions before the 1971 amendment. After the amendment, APA review continued to apply to denials of pollution control facilities tax credits and, in addition, there was APA review of other uncontested cases. The 1971 amendment, thus, was not necessary to bring this decision under APA review. Denials of pollution control tax credits had a specific time limit before the 1971 amendment, and nothing about that amendment affected the procedure for seeking review of an EQC order. It was not an inconsistency in the law to establish different time limits for seeking judicial review in different kinds of cases. The repeal of an exception that allowed non-APA review of some decisions has nothing to do with the continued effect of a minor variation for decisions that were already subject to APA review.

■ Petitioner argues, finally, that the incorrect information in EQC's order violated its due process rights.[3] It recognizes that an agency's incorrect statement of a party's right to judicial review does not act as an estoppel. "Whatever merit an estoppel argument against an administrative agency may have in other contexts, it cannot serve to confer jurisdiction on a court where jurisdiction does not otherwise exist." *1000 Friends of Oregon v. LCDC (Clatsop Co.)*, 301 Or 622, 632, 724 P2d 805 (1986). Instead, petitioner relies on a footnote in which the Supreme Court noted that the petitioner in *1000 Friends* had not based its estoppel argument on either the state or federal constitution. *Id.* at 632 n 7. In this case, petitioner asserts that, it makes the argument that the petitioner in *1000 Friends* failed to make.

The first problem in dealing with these issues is to identify exactly what petitioner believes to be the legal source of its harm. The notice of appeal rights in the order was not legally required, and petitioner does not argue that the inaccuracy affected the finality of the order. *Cf. Oldham v. Plumlee*, 151 Or App 402, 404, 950 P2d 918 (1998); *Callahan v. Employment Division*, 97 Or App 234, 776 P2d 21 (1989) (because of statutory requirement of statement of appeal rights in final order in contested case, order is not final if statement is incorrect). Instead, petitioner relies on United States Supreme Court cases that require adequate notice before a court acts to affect the rights of a known party. *See Mennonite Bd. of Missions v. Adams*, 462 US 791, 103 S Ct 2706, 77 L Ed 2d 180 (1983); *Mullane v. Central Hanover Bank & Trust Co.*, 339 US 306, 70 S Ct 652, 94 L Ed 865 (1950). Those cases are not analogous, because petitioner does not challenge the adequacy of EQC's notice of its action on the substance of the application.[4]

There is a process available for seeking review of EQC's decisions, and the misstatement in EQC's order did not direct petitioner away from that procedure. The time for

---

[3] We consider the due process issues only under the Fourteenth Amendment. Article I, section 10, of the Oregon Constitution, on which petitioner also relies, is not a due process clause. *State v. Moen*, 309 Or 45, 98, 786 P2d 111 (1990).

[4] On the other hand, EQC relies on two federal appellate cases that are also readily distinguishable from this case. In those cases the government simply failed to inform the parties of their appeal rights; it did not actively misinform them.

petitioning for review is a matter of statute and thus of public knowledge. EQC does not have the authority to bind the government to a specific time period for seeking judicial review of its decisions; that is a matter that the legislature has resolved by statute. *Cf. Wiggins v. Barrett & Associates*, 295 Or 679, 696-97, 669 P2d 1132 (1983) (agent of public sewer district could bind district by apparent authority to action that was within district's powers and that it could have authorized agent to take). The parties have not pointed us to any case in which a court has held that that kind of misinformation constitutes a due process violation. In light of these considerations, we are unwilling to conclude that EQC's actions fell below the constitutional standard.

Affirmed.

**ARMSTRONG, J.,** dissenting.

The majority concludes that ORS 468.107(3) was not implicitly repealed by the legislature's 1971 amendment of ORS 183.480, in which it extended judicial review under the APA to noncontested cases and removed language that had served to qualify the section's application. Because I believe that the majority has construed the applicable statutes in a way that distorts the intent of the legislature, I respectfully dissent.

Before 1971, whether a party could seek judicial review under the APA of a state agency decision depended on the nature of the decision. If the agency made its decision in a contested case proceeding, the parties were entitled to judicial review of the decision under ORS 183.480 (1969) of the APA, which provided, in relevant part:

"(1)(a) *Except as otherwise provided specifically by statute*, any party to an agency proceeding aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, is entitled to judicial review thereof under ORS 183.310 to 183.510.

"* * * * *

"(2)   * * * Proceedings for review shall be instituted by filing a petition in [the circuit court]. The petition may be filed within 60 days only following entry of the decision." (Emphasis added.)

If the agency made its decision in a noncontested case proceeding, judicial review of the decision was governed by statutes found outside the APA.[1]

In 1971, the legislature revised the system of judicial review of state agency decisions to establish a comprehensive, uniform scheme of review for contested *and* noncontested cases. An integral part of that revision was the removal of the clause "Except as otherwise provided specifically by statute" from ORS 183.480. I believe that the implication of that deletion was that other statutes addressing judicial review of agency decisions that were inconsistent with the APA were not to be given effect.

I find support for my interpretation in our decision in *School Dist. No. 48 v. Fair Dis. App. Bd.*, 14 Or App 35, 41, 512 P2d 799 (1973). There we discussed how the Supreme Court had interpreted the "except as otherwise provided" clause in *Wampler v. Dept. of State Police*, 224 Or 439, 355 P2d 238 (1960). We concluded that the removal of that clause from ORS 183.480 after the *Wampler* decision required a new construction of the statute. *School Dist. No. 48*, 14 Or at 39-41. We then cited various authorities for the proposition that all state administrative decisions should be subject to review under a single, uniform procedure. From that, I conclude that we understood the 1971 revision of ORS 183.480 to make the APA take precedence over other existing statutes that established separate, inconsistent procedures for obtaining review of agency decisions.

ORS 468.170(3) is such a provision. It provides for a 30-day period in which to seek judicial review of a decision denying a pollution tax credit. By doing so, it conflicts with ORS 183.484(3) of the APA, which gives a party 60 days in which to seek judicial review of an agency decision in such a noncontested case. The majority has concluded that there is no conflict between the provisions because an aggrieved party who adheres to the time period in ORS 468.170(3) will always satisfy the 60-day period in ORS 183.484(3). Contrary to the majority's view, both provisions cannot be given their

---

[1] There were provisions in chapter 183 that addressed judicial review of agency rules and of declaratory rulings by state agencies, ORS 183.400, ORS 183.410, but they do not bear on the issue presented here.

intended effect. One or the other must control, which means that the provisions are incompatible. Accordingly, our decisions in *School Dist. No. 48* and *League of Women Voters v. Lane Co. Bndry. Comm.*, 32 Or App 53, 573 P2d 1255, *rev den* 283 Or 503 (1978), should guide our decision here.[2] The only principled resolution of the conflict in the statutes is to follow the legislature's intent and hold that the time limit in ORS 468.170(3) was impliedly repealed by the 1971 amendment to ORS 183.480.

As for the majority's intimation that the legislature's decision to streamline administrative procedures with its 1971 revisions of the APA did not apply to the conflicting provisions in ORS 468.170(3) because *former* ORS 449.090 (1969) and *former* ORS 449.635(1) appeared to allow for APA review of a rejection of a pollution control facilities tax credit, I am not convinced that that reading of those statutes is correct. When read in conjunction with the APA as it was written at the time, it would appear that the provisions allowing for such review were in direct conflict with the limitation of APA review to contested cases. I believe that it was with such apparent conflicts in mind that the legislature undertook to amend the APA, and that those amendments did indeed repeal the 30-day time limit prescribed by ORS 488.170(3).[3]

For the reasons above, I respectfully dissent.

---

[2] I have no doubt that, had ORS 468.170(3) provided for review of pollution tax credit decisions by filing a writ of review within 30 days, the majority would have applied our precedents and concluded that the amendment to ORS 183.480 had impliedly repealed the designation of the writ of review as the means to obtain review. I must assume that the majority would then have struggled with other maxims of construction to determine whether the 30-day time limit in ORS 468.170(3) could be severed from the statute and, thus, preserved. That suggests the folly of the exercise in which the majority engages here. The simpler, and correct, answer is that the 1971 Legislature enacted the judicial review provisions to create a uniform body of law that displaced all incompatible provisions. The 30-day time limit in ORS 468.170(3) is such an incompatible provision, and the majority errs in concluding otherwise.

[3] The effect of the majority's decision is to reinsert into ORS 183.480 the clause that makes the provisions of the APA applicable "[e]xcept as otherwise provided specifically by statute." The effect of doing that is to undo the legislature's intent rather than to effectuate it.