Argued and submitted January 26, 2022, reversed and remanded June 28, 2023

Steven BELLSHAW,
individually and on behalf of
all other similarly situated persons,
*Plaintiff-Respondent,*

*v.*

FARMERS INSURANCE COMPANY
OF OREGON,
an Oregon corporation,
*Defendant-Appellant.*

Multnomah County Circuit Court
15CV16877; A173722

533 P3d 40

In this class action case, defendant appeals from a judgment awarding $100 in statutory damages to each member of the class based on defendant's failure to comply with motor vehicle insurance policy rights notification requirements. Defendant argues (1) the trial court misinterpreted the statutory requirements; (2) the trial court erred in amending the class definition, making it impermissibly broad and including time-barred claims; and (3) the aggregate statutory penalty violates due process. *Held*: The Court of Appeals rejected defendant's first assignment of error, concluding that the trial court did not err in its interpretation of the notice requirements of ORS 746.290(2)(b). The court agreed with defendant that the trial court misapplied the statute of limitations analysis and therefore erred in certifying a class that included time-barred claims, including the claim of the only named class representative. Because the decision regarding the class definition changes the statutory damages to be awarded, the court did not reach a conclusion on whether the total amount of damages violated due process, but offered guidance as to the analysis to be undertaken on remand, and confirmed that aggregate statutory damages awards are subject to a due process assessment.

Reversed and remanded.

Judith H. Matarazzo, Judge.

Brad S. Daniels argued the cause for appellant. Also on the briefs were Timothy W. Snider, Stephen H. Galloway, and Stoel Rives LLP.

Nadia H. Dahab argued the cause for respondent. Also on the brief were David F. Sugerman and Sugerman Law Office; Tim Quenelle and Tim Quenelle PC; and Amy Johnson and Law Offices of Amy R. Johnson.

Before Ortega, Presiding Judge, and Lagesen, Chief Judge, and Powers, Judge.*

ORTEGA, P. J.

Reversed and remanded.

_____

\* Lagesen, C. J., *vice* James, J. pro tempore.

**ORTEGA, P. J.**

This case concerns a class action proceeding against Farmers Insurance Company for providing insufficient notices to customers regarding their rights with respect to choosing an auto repair shop. The trial court found that the notice in question did not satisfy all of the statutory requirements, and thus awarded each member of the class the statutory penalty of $100, for a total award of more than $26 million. On appeal, defendant raises six assignments of error. In its first assignment of error, defendant asserts that the trial court misinterpreted the statute at issue. In its second and third assignments of error, defendant argues that the aggregate statutory penalty violates defendant's due process rights. In its fourth and fifth assignments of error, defendant argues that the trial court erred by certifying a class that included time-barred claims. In its sixth assignment of error, defendant asserts that the trial court erred by amending the class parameters after making a decision on the merits.

We conclude that the trial court did not err in its interpretation of the statute. However, we conclude that the trial court misapplied the statute of limitations analysis, and the resulting class definition includes claims that are time-barred, including the claim of the only named class representative, which requires reversal on the fourth and fifth assignments of error and remand to the trial court, and eliminates the need to address the sixth assignment of error. Given the change in class definition, the aggregate statutory damages amount will change and must be reassessed; we offer guidance as to how the trial court will need to resolve the due process issues on remand. We accordingly reverse and remand for further proceedings.

## I.   HISTORICAL BACKGROUND AND PROCEDURAL HISTORY

In 1977, the Oregon Legislature enacted ORS 746.280, which provided that an insurer could "not require that a particular person make the repairs to the insured's motor vehicle as a condition for recovery by the insured under a motor vehicle liability insurance policy." ORS 746.280 (1979), *amended by* Or Laws 2007, ch 506, § 1. The

Legislature also enacted ORS 746.290, which required insurers to notify their customers of "the provisions of ORS 746.280," and ORS 746.300, which created a right of action for "an insured whose insurer violates ORS 746.280 or 746.290."[1] *See also* Or Laws 1977, ch 785, §§ 2-4.

In 1993, the Oregon Insurance Division issued Bulletin 93-3 (1993 Bulletin), which approved specific language for insurance companies to use to comply with ORS 746.290. Oregon Insurance Division Bulletin 93-3 (Apr 20, 1993). Defendant began using the language from the 1993 Bulletin in its notices that were sent with all new policies issued in Oregon (Notice). The Notice stated:

> "OREGON LAW STATES THAT: AN INSURER SHALL NOT REQUIRE THAT A PARTICULAR PERSON MAKE THE REPAIRS TO THE INSURED'S MOTOR VEHICLE AS A CONDITION FOR RECOVERY BY THE INSURED UNDER A MOTOR VEHICLE LIABILITY INSURANCE POLICY."

(Uppercase in original.) It is undisputed that defendant continued to use the same Notice until after this action was filed.

In 2007, the legislature passed Senate Bill (SB) 523, which amended ORS 746.280 to require insurers to meet specific requirements when recommending a repair shop to an insured at the time a claim was made following damage to a vehicle. Or Laws 2007, ch 506, § 1. The original ORS 746.280 became ORS 746.280(1), and the legislature added three additional provisions, regarding notice of an insured's rights at the time a claim was filed before an insurer recommended a repair shop, prohibitions on insurers limiting the cost of repairs if a customer did not choose a recommended shop, and additional required notices if a customer did choose a recommended shop. *Id.* In amending ORS 746.280, the legislature did not disturb the ORS 746.290 cross-reference, which continued to require insurers to notify their customers of "the provisions of ORS 746.280."

In response to SB 523, defendant created new notices that were sent to customers at the time a claim was

---

[1] ORS 746.290 and ORS 746.300 have not been substantively amended since their enactment in 1977. We therefore cite to the current versions.

filed and updated its customer service script to reflect the changes to ORS 746.280. However, defendant did not update the Notice that accompanied policies when they were initially issued. The Department of Consumer and Business Services (DCBS), the successor to the Oregon Insurance Division, did not update its 1993 Bulletin guidance to insurance companies until 2015, and continued to approve defendant's Notice.

Plaintiff Bellshaw purchased his auto liability policy from defendant in May 2011. In 2013, he was in an accident that necessitated repairs. He accepted a recommendation of a repair shop from defendant, believing his policy would not cover repairs completed by a dealership. Bellshaw was ultimately dissatisfied with the repairs and brought a suit against defendant and the other party to the car accident (who was also insured by defendant). The case was tried to a jury, which ultimately awarded Bellshaw no damages.

Eventually Bellshaw brought the current action in June 2015, based on the allegation that defendant violated the notice requirements of ORS 746.290(2).[2] After written discovery and depositions, along with extensive briefing and arguments, the trial court ruled in January 2018 on the parties' cross-motions for summary judgment, concluding that the Notice provided to each customer did not comply with the requirements of ORS 746.290(2)(b). Following further motions and hearings regarding the class definition and the amount of damages due, the court issued its general judgment in March 2020. Defendant filed this appeal.[3]

---

[2] Plaintiff's first amended complaint sought certification of an additional "Repair Class" of Oregon consumers who had received repairs through defendant's recommended "Circle of Dependability" program. The complaint also included claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Those claims were dismissed on partial summary judgment, and plaintiff's Second Amended Complaint dropped the allegations related to the "repair class." None of those claims are at issue in this appeal.

[3] Given the extensive briefing and proceedings before the trial court on a range of issues, the parties correctly agree that each of the assigned errors is preserved. The procedural history as it relates to each assignment will be discussed in further detail in each section below.

## II. STATUTORY INTERPRETATION

In its first assignment of error, defendant asserts that the trial court erred as a matter of law by holding that its Notice did not comply with ORS 746.290(2)(b). Defendant contends that the trial court's interpretation of the statutory requirements was incorrect in light of the text, context, and legislative history of the 2007 amendments. Defendant further asserts that its Notice was approved by the relevant agency, and that defendant cannot be found liable for conduct that complied with agency direction. Plaintiff argues that the trial court correctly interpreted the plain text of the statute, and correctly found that defendant's Notice was not in compliance. We agree with plaintiff and conclude the trial court did not err.

This issue arose via cross-motions for summary judgment, but the ultimate question is one of statutory interpretation. We review for errors of law. *McLain v. Maletis Beverage*, 200 Or App 374, 377, 115 P3d 938 (2005) ("When a grant of summary judgment is the result of a substantive legal conclusion, we review that conclusion for errors of law."); *see also Bialostosky v. Cummings*, 319 Or App 352, 354-56, 511 P3d 31 (2022) (stating the standard of review where the material facts are uncontested and the outcome turned on the meaning of the statute). In interpreting a statute, we rely on our familiar framework laid out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), by examining the statute's text in context and considering any relevant legislative history, then, if necessary, general maxims of statutory construction.

We begin with the relevant statutes. As noted above, in 1977, the legislature passed a bill establishing an insured's right to choose an auto repair shop following an accident. Or Laws 1977, ch 785, § 2. The same bill also established the requirement for auto repair shops and insurance companies to inform consumers of their rights and created the right for consumers to bring a civil action for actual or statutory damages if the notice requirements were not met. Or Laws 1977, ch 785, §§ 3, 4, 7. In 2007, the legislature amended ORS 746.280 to add additional notice requirements when an insurer gives its customers

recommendations for which repair shop to use. Or Laws 2007, ch 506 (2007 amendments).

At the time relevant to the present action, the statutes stated:

"(1)   An insurer may not require that a particular person make the repairs to the insured's motor vehicle as a condition for recovery by the insured under a motor vehicle liability insurance policy.

"(2)   Prior to providing a recommendation that a particular person make repairs to the insured's motor vehicle, the person adjusting the claim on behalf of the insurer shall inform the insured of the rights conferred by subsection (1) of this section by communicating in a statement substantially similar to the following:

"OREGON LAW PROHIBITS US FROM REQUIRING YOU TO GET REPAIRS TO YOUR VEHICLE AT A PARTICULAR MOTOR VEHICLE REPAIR SHOP. YOU HAVE THE RIGHT TO SELECT THE MOTOR VEHICLE REPAIR SHOP OF YOUR CHOICE.

"(3)   If an insured elects to have the motor vehicle repaired at a motor vehicle repair shop other than a shop recommended by the insurer, the insurer may not limit the cost of repairs necessary to return the motor vehicle to a preloss condition relative to safety, function and appearance other than as stated in the policy or as otherwise allowed by law.

"(4)   If an insured accepts the insurer's recommendation, the insurer shall provide, electronically or in printed form, a statement to the insured within three business days after the date of acceptance in substantially the following form:

"WE HAVE RECOMMENDED A MOTOR VEHICLE REPAIR SHOP. IF YOU AGREE TO USE OUR RECOMMENDED REPAIR SHOP, YOUR VEHICLE WILL RECEIVE REPAIRS RETURNING IT TO A PRELOSS CONDITION RELATIVE TO SAFETY, FUNCTION AND APPEARANCE AT NO ADDITIONAL COST TO YOU OTHER THAN AS STATED IN THE INSURANCE POLICY OR AS OTHERWISE ALLOWED BY LAW."

ORS 746.280 (uppercase in original).

"(1) An adjuster establishing loss under a motor vehicle liability insurance policy shall advise the insured of the provisions of ORS 746.280.

"(2) Every motor vehicle liability insurance policy issued in this state after December 31, 1977, and any extension or renewal after that date of a policy issued before that date shall be accompanied by a statement in clear and conspicuous language approved by the director of:

"(a) The rights and responsibilities of the insured when a claim is submitted; and

"(b) The provisions of ORS 746.280."

ORS 746.290.

On summary judgment, the trial court concluded that "ORS 746.290 as amended requires that the insurer give notice of all four sections of ORS 746.280. [Defendant's] notice contained only the first section of ORS 746.280, which would have been compliant prior to the 2007 amendment." The trial court reviewed the legislative history of the 2007 amendments and acknowledged that "clearly the goal of the legislation was to add specific requirements that an insurer must meet when recommending a repair shop to an insured at the time a claim is made after an accident. In other words, at the time an insured needed the information." In response to defendant's argument that the legislature actually intended only to require insurers to inform their insured of ORS 746.280 as originally enacted, the court took the view that doing so would be

"to read into the plain language of the statute what the legislature perhaps intended to do, but failed to do. I am not prepared to do so. As a matter of law, the statute was not followed and the written notice that accompanied its motor vehicle policies did not inform policy holders [of all four sections of ORS 746.280 as amended]."

On appeal, the parties reiterate the arguments they raised before the trial court, arguing for varying interpretations of the statute.

As an initial matter, defendant argues that ORS 746.290(2) specifically delegates to the director of DCBS the authority to determine whether a notice is compliant with

the law, and that the director is the arbiter of compliance, not the courts.[4] Defendant asserts that plaintiff's action is an improper collateral attack on an agency action through a private lawsuit. We disagree. ORS 746.290(2) requires that insurers provide notice of the provisions of ORS 746.280 in language "approved by the director[,]" but does not delegate authority to the director to determine what is necessary to comply with the statute. The statute lays out the requirements for a notice, and there is no discretion delegated to the director as to those requirements. *See SAIF v. Shipley*, 326 Or 557, 561, 955 P2d 244 (1998) ("[A]n agency has only those powers that the legislature grants and cannot exercise authority that it does not have.").

The case law cited by defendant all relates to lawsuits brought as collateral challenges to agency actions, in attempts to bypass administrative remedies or other proper avenues of review.[5] That is not the circumstance here. Plaintiff is not using a private action to challenge an agency decision or rule outside of prescribed processes; plaintiff is exercising the right established by ORS 746.300 to bring

---

[4] The statute does not state that "director" means the director of DCBS. However, every other use of the word "director" in ORS chapter 746 refers to "the Director of the Department of Consumer and Business Services."

[5] *Muller v. Dept. of Agriculture*, 164 Or App 11, 16-17, 988 P2d 927 (1999) (plaintiff alleged negligence on the part of the Department of Agriculture in denying plaintiff's permit for farm burning, but the court dismissed the case because the exclusive mechanism for challenging the validity of an agency action is under the Administrative Procedures Act (APA) contested case review procedures); *Jeld-Wen, Inc. v. Bartz*, 142 Or App 433, 436, 921 P2d 419 (1996) (petition for judicial review of a Workers' Compensation Board enforcement order was an impermissible collateral attack on the underlying merits decision that the employer had not appealed); *Chicago & N. W. Tr. Co. v. Kalo Brick & Tile Co.*, 450 US 311, 324, 332, 101 S Ct 1124, 67 L Ed 2d 258 (1981) (federal law preempted plaintiff's state law damages claim and prevented plaintiff from bringing a private suit challenging defendant's actions, which were approved by a federal agency's final decision); *Whitney Bank v. New Orleans Bank*, 379 US 411, 413-15, 85 S Ct 551, 13 L Ed 2d 386 (1965) (banks could not request injunctive and declaratory relief regarding a comptroller's authority in a separate action while direct appeals of the action were still pending on administrative and judicial review); *Dave v. Rails to Trails Conservancy*, 863 F Supp 1285, 1289-91 (ED Wash 1994), *aff'd*, 79 F3d 940 (9th Cir 1996) (action was a challenge to the validity of an agency decision, not a separate suit, and had to be brought in the circuit court of appeals, pursuant to the Hobbs Act); *Caribou Four Corners, Inc. v. American Oil Co.*, 628 F Supp 363, 377 (D Utah 1985) (suit against other oil companies was in substance a challenge to an agency action and could not be maintained without exhaustion of administrative remedies).

a private action because an insurer provided insufficient notice. We conclude that the DCBS approval of the Notice does not relieve defendant of liability, and we retain authority to interpret the statute.[6]

By its plain text, ORS 746.290(2)(b) requires that relevant insurance policies must be accompanied by a statement of "[t]he provisions of ORS 746.280." ORS 746.280 contains four sections. Therefore, ORS 746.290(2)(b), on its face, requires notification of all four sections of ORS 746.280.

In arguing for a different interpretation, defendant asserts that the context of the related statutes and their form when adopted and amended compels a conclusion that the notice sent at the time of issuance of a policy must only inform a customer of ORS 746.280(1). We acknowledge defendant's argument that a plain reading of the text creates three different categories of policies and notifications: those issued after the 2007 amendments took effect, which required notification at the time the policy was issued of all four sections of ORS 746.280; those issued between 1978 and 2007, which required notification at the time the policy was issued of the original ORS 746.280; and policies issued prior to 1978, which required notification of the provisions of ORS 746.280 upon "any extension or renewal." Defendant argues that this absurd result indicates that the 2007 amendments should not be read to be included in the ORS 746.290(2)(b) cross-reference, and that customers only needed to be notified of ORS 746.280(2) through (4) at the time a claim was filed. While defendant's argument has some logical appeal, it does not track with the text of the statute, and it is not within our authority to rewrite the statute. *Cole v. Farmers Ins. Co.*, 108 Or App 277, 280, 814 P2d 188 (1991) ("If the legislature has chosen language that creates unexpected and unintended results, the legislature can amend the statute to express its actual intent. It is not the function of a court to insert language that should have been added and ignore language that should have been omitted."). In any event,

---

[6] Defendant asserts that a party cannot be expected to comply with agency requirements on one hand and be held liable for doing so on the other. As discussed further below, approval from DCBS may reduce defendant's culpability, but it does not eliminate or resolve the responsibility to comply with the law.

the differences may be hard to justify, but they do not qualify as absurd. Interpreting ORS 746.290(2)(b) as requiring notice at the time a policy is issued (or renewed, for policies issued prior to 1978), *in addition* to providing such notice at the time a claim is submitted, is consistent with the goal of informing customers of their rights.

Our interpretation is consistent with ORS 174.060, which states:

> "When one statute refers to another, either by general or by specific reference or designation, the reference shall extend to and include, in addition to the statute to which reference was made, amendments thereto and statutes enacted expressly in lieu thereof unless a contrary intent is expressed specifically or unless the amendment to, or statute enacted in lieu of, the statute referred to is substantially different in the nature of its essential provisions from what the statute to which reference was made was when the statute making the reference was enacted."

By this standard, the ORS 746.290(2)(b) cross-reference to ORS 746.280 includes all provisions of ORS 746.280 as amended, not just ORS 746.280 as originally enacted. Defendant encourages us to disregard ORS 174.060, asserting that the intent of the legislature was clear that the 2007 amendments were not supposed to extend to the ORS 746.290(2)(b) notice requirements, and arguing that the 2007 amendments are substantially different from the original provision cross-referenced by ORS 746.290(2)(b). We disagree on both points. There was no expressed intent from the legislature to limit the cross-reference only to the original text of ORS 746.280, which would have been simple to accomplish by amending the cross-reference to read, "The provisions of ORS 746.280(1)." Furthermore, the 2007 amendments are not substantially different from the original text. They all concern a consumer's right to notice of their rights as related to automobile insurance policies and the selection of a repair shop, and we cannot conclude that the amended ORS 746.280 is "substantially different in the nature of its essential provisions" from its form when ORS 746.290(2)(b) was enacted. Defendant has not identified any case where Oregon appellate courts have declined to apply

ORS 174.060, and we have been unable to locate any such cases.[7]

Finally, as further context for the textual interpretation, defendant argues that if the 2007 amendments were intended to change the entire notice regime of the original statute, then ORS 746.285 would have been amended as well, to provide customers with notice in the location and at the time they were most likely to need the information—namely, at the repair shop. We conclude that this argument does not shed any significant light on the construction of the interplay between ORS 746.280 and ORS 746.290(2)(b), because, as discussed below, there is no indication that the entire notice regime was intended to change.

Defendant additionally asserts that the legislative histories of the original bill and the 2007 amendments indicate that ORS 746.290(2)(b)'s cross-reference to ORS 746.280 was only intended to extend to ORS 746.280(1), which was the only section that existed at the time the cross-reference was created. However, "a party seeking to overcome seemingly plain and unambiguous text with legislative history has a difficult task before it." *Gaines*, 346 Or at 172. We agree with defendant that the committee hearings and public testimony regarding the 2007 amendments indicate that the purpose of the change was to provide consumers with additional notice of their rights at the time they most needed the information, namely, when they were in need of a repair shop for their vehicle.[8] However, our role is to ascertain and

---

[7] The only case that refers to ORS 174.060 without applying it is *State v. Charlesworth/Parks*, 151 Or App 100, 107, 951 P2d 153 (1997), *rev den*, 327 Or 82 (1998), which held that "ORS 174.060 does not apply to the interpretation of statutes that refer to non-Oregon law." That case is not applicable here.

[8] *See, e.g.*, Audio Recording, House Committee on Consumer Protection, SB 523 A, May 21, 2007, at 23:43-1:09:00 (comments of Rep Suzanne Bonamici; Rep Donna Nelson; Rep Chuck Riley; Jim Marr, Oregonians for Safe Auto Repair; Darrell Fuller, NW Automotive Trades Association), https://sos.oregon.gov/archives/Pages/records/legislative-minutes-2007.aspx (accessed Mar 22, 2023) (discussing the importance of providing consumers with information at the time they need to have their car repaired). Other discussions indicated that the amendments were not intended to change the notice requirements at the time a policy was issued:

"[Representative Bonamici:] I am trying to figure out the timing here. *** Prior to providing a recommendation, the notice is given. So it's not given to everybody? Or is it given to everybody?

declare what is contained in a statute, "not to insert what has been omitted, or to omit what has been inserted[.]" ORS 174.010. We therefore cannot contravene the express language of the statute simply because the final text does not precisely track the intended purpose.

We therefore conclude that ORS 746.290(2)(b) requires insurers to provide notice of all of the provisions of ORS 746.280 when a relevant policy is issued. Defendant's Notice did not contain information regarding all four sections of ORS 746.280. The trial court did not err in granting plaintiff's motion for summary judgment.

### III.   CLASS DEFINITION

Defendant's fourth through sixth assignments of error relate to the trial court's expansion of the class parameters. Defendant argues that the expansion was improper because the resulting class includes claims that are time-barred, including the claim of the only representative plaintiff, Bellshaw. Defendant also asserts that amending the class definition after a decision on the merits violated ORCP 32 C(1). We agree that the final class definition includes claims that are time-barred. We therefore remand with direction to restore the class to the parameters set by the April 2017 order.[9]

---

"[Mr. Miller:] * * * It's your first contact with whoever is adjusting the accident. And at that statement, prior to them communicating that—of whether they have a program or not—they have to inform that person of their rights. And so the first contact with—the first thing you do is call the 1-800 number. You're on the phone and the first thing they would have to do is essentially inform you of—of their rights as an insured.

"* * * * *

"[Representative Bonamici:] * * * But the notice on the first page doesn't go to everybody. It only goes to the people when the insurance company is going to make a recommendation, correct? So not everybody gets the first notice?

"[Mr. Miller:]  I believe so, yes."

*Id.* at 01:01:55 (comments of Rep Bonamici, Shawn Miller). *See also* Audio Recording, Senate Committee on Commerce, SB 523 A, Apr 30, 2007, at 0:45:04 (comments of Chair Sen Floyd Prozanski), https://sos.oregon.gov/archives/Pages/records/legislative-minutes-2007.aspx (accessed Mar 22, 2023) ("So it's our intention that the dash-ones are for the individual or unit that's actually doing the adjusting of the claim on behalf of the insurer, not the insurer or the agent that maybe sold it, but the person or unit that would be doing the negotiations for the fix.").

[9] This resolution makes a decision on the sixth assignment of error unnecessary.

A.  *Procedural Background*

The trial court originally certified the class in December 2016, finding that the requirements of ORCP 32 A were satisfied and that a class action was superior to other available methods of adjudication, pursuant to ORCP 32 B. The court determined that the class consisted of "Oregon consumers who, between June 29, 2012 and the first date of notice of pendency of this class action, were insured under an Oregon automobile insurance policy issued by [defendant]."[10]

In February 2017, defendant filed a motion to amend the class definition to exclude class members whose claims were time-barred. Defendant argued that, given its interpretation of the relevant statute, the class should be amended to include only those class members who had a policy *issued* during the relevant three-year period. Defendant further argued that such a change in the class definition would exclude the class representative, Bellshaw, and without an alternative class representative, the class should be decertified.

The trial court granted defendant's motion to amend the class definition, but denied the motion to decertify.[11] The trial court stated:

"By its plain terms, ORS 746.290(2)(b) provides that insurers must include an appropriate statutory notice with (1) 'every motor vehicle liability insurance policy issued in this state after December 31, 1977,' and (2) 'any extension or renewal after that date of a policy issued before that date.' The 2007 amendments to ORS 746.280 impose additional specific requirements that insurers must meet when adjusting an insured's claim post loss, but do not change the plain language concerning the notice required in ORS 746.290(2). The Court determines that, [defendant's]

---

[10] Excluded from the class were "officers and directors of Farmers Insurance Company of Oregon, attorneys for the class, any judge or juror who sits on this case, and any person who previously settled or adjudicated a claim against Farmers involving a claim of violation of ORS 746.290." Those exclusions remained consistent through the various amendments to the class and will not be repeated throughout this opinion.

[11] That decision was made prior to the court's ruling on summary judgment discussed in the previous section of this opinion.

proposed class definition is appropriate.[12] However, if as Plaintiff contends the notice provided in 2011 was not adequate, the class may well be much larger and that will need to be determined at a later stage in this litigation.[13] Defendant's Statute of Limitation assumes the notice provided was in fact adequate and thus the statute is triggered by the date the appropriate notice was given. If the notice was not adequate, the claim will not accrue until appropriate notice is given."

The court further noted that different statutes of limitations could apply to different claims, "one for those who were issued policies between June 29, 2012 and November 30, 2016, for those whose claims arise based on ORS 746.290, and [one] for those whose claims arise as a result of ORS 746.280, two years, or shortly thereafter, from the date of an auto accident." The court found Bellshaw was not disqualified from serving as class representative because his claim for actual damages accrued at the time of his automobile accident fell into the second category and was timely.[14] The court therefore denied defendant's motion to decertify the class.

Following the trial court's ruling the following year on the parties' summary judgment motions, plaintiff moved to amend the class definition again, requesting that the court restore the class to its original larger definition of individuals who were insured under a policy during the relevant period. Defendant objected, arguing that expansion of the class after a decision on the merits violated ORCP 32 C(1) and reasserting its arguments about time-barred claims and the statute of limitations. The trial court granted

---

[12] The order does not contain the text of defendant's proposed class definition. In its motion to amend the class, defendant requested the following class definition: "Oregon consumers who, between June 29, 2012 and November 30, 2016, were issued an Oregon automobile insurance policy by Farmers." Defendant and plaintiff agreed to cut the class period off at November 30, 2016, which was the end of the month in which the trial court originally granted class certification.

[13] Based on the discussion at the hearing on the motion to amend the class, the court's rationale appears to be based on a continuing tort theory that if an insufficient notice were sent out, the insurer would have a continuing duty to provide an adequate notice at least once.

[14] It appears that Bellshaw did not continue to pursue his claim for actual damages. The parties do not make any arguments in their briefing before us related to that claim.

plaintiff's motion and certified the following class: "Oregon consumers who, between June 29, 2012 and November 30, 2016, were insureds under an Oregon automobile insurance policy issued by [defendant] after January 1, 2008." In its accompanying letter opinion, the trial court recounted its decision from April 2017 when it adopted defendant's proposed class, noting its prior acknowledgement that the class definition could change depending on the result of further litigation, and stating: "The Court has now determined the notice was not in compliance with the plain wording of the statute and thus the class must now be extended to the one originally proposed by the plaintiff. Since the class representative's claim did not accrue in 2011, his penalty claim is not time-barred."

On appeal, defendant renews its arguments that the expansion of the class was improper.[15]

B. *Analysis*

We review class certification for abuse of discretion, but we review legal issues underlying the decision, such as the statute of limitations, for legal error. *Delgado v. Del Monte Fresh Produce, N. A., Inc.*, 260 Or App 480, 493, 317 P3d 419, *rev den*, 355 Or 380 (2014).

The parties do not dispute that the class claims under ORS 746.300 are subject to a three-year statute of limitations, pursuant to ORS 12.100(2).[16] ORS 12.010 provides that "[a]ctions shall only be commenced within the periods prescribed in this chapter, after the cause of action shall have accrued[.]" A cause of action accrues "when an action may be maintained thereon" or "whenever one person may sue another." *Griffin v. Tri-Met*, 318 Or 500, 506, 870 P2d 808 (1994) (quoting *Berry v. Branner*, 245 Or 307, 312, 421 P2d 996 (1966)); *see also U.S. Nat'l Bank v. Davies*, 274 Or 663, 666-67, 548 P2d 966 (1976) ("'In the best-known definition [a cause of action] consists of every fact which it would be necessary for the plaintiff to prove, if traversed,

---

[15] Neither party reasserts on appeal the trial court's rationale for either change in the class definition.

[16] "An action upon a statute for penalty or forfeiture, where the action is given to the party aggrieved *** shall be commenced within three years." ORS 12.100(2).

in order to support his right to judgment. When these facts have occurred ***, a cause of action is said to accrue to the plaintiff because he can then prosecute an action effectively.'" (Quoting M. Franks (England) Limitation of Actions 11 (1959).)).

Defendant asserts that each individual plaintiff's claim accrued when the plaintiff received a deficient notice at the time the policy was issued, and therefore anyone whose policy was issued more than three years prior to the commencement of this action has no viable claim. Plaintiff argues that defendant's unlawful conduct was ongoing, because each customer was entitled to the relevant disclosures, and each time a policy was renewed or extended without providing the proper notice, a new claim accrued.

We agree with defendant, with respect to anyone whose policy was issued after December 31, 1977. ORS 746.290(2) states that "[e]very motor vehicle liability insurance policy *issued* in this state after December 31, 1977, *** shall be accompanied by a statement in clear and conspicuous language approved by the director of *** the provisions of ORS 746.280." (Emphasis added.) At the time those policies were issued without a sufficient accompanying statement of the provisions of ORS 746.280, an action could have been maintained under ORS 746.300. Therefore, the claims for statutory damages accrued at the time the policy was issued, and the statute of limitations began to run at that point.[17] An individual who was insured during the three years prior to the initiation of this action on June 29, 2015, but whose policy was issued prior to June 29, 2012, does not have a timely claim.[18] The class definition is therefore

---

[17] We note that this analysis only applies to claims for statutory damages. A claim for actual damages would be analyzed differently in terms of accrual and the statute of limitations.

[18] We acknowledge the other category of policies addressed in ORS 746.290, those issued prior to December 31, 1977. Those policies are subject to notice of the provisions of ORS 746.280 upon any extension or renewal. Any such extension or renewal of a policy issued before December 31, 1977, that occurred after January 1, 2008, and did not contain the required rights notification would constitute a violation of the notice requirements of ORS 746.290(2)(b), thus marking the accrual of a cause of action. The parties did not address the possibility of a different class definition for customers who were first issued a policy prior to 1978. Given the above description of the legislative history and intent of the 2007 amendments, it is possible that the disparate application of the notice

improperly broad, and the class contains individuals whose claims are time-barred.

Plaintiff argues the class definition was correct because defendant's unlawful conduct was ongoing, and thus a claim accrued each time defendant extended or renewed any policy without providing a compliant notice. Plaintiff relies on the 1993 Bulletin, which encouraged compliance with the 1977 statute by directing insurers that "[i]f you have not yet complied with ORS 746.290(2), you must enclose the insert with a full cycle of renewals to ensure that all insureds have received the notice of prohibition at least once." Oregon Insurance Division Bulletin 93-3 (Apr 20, 1993). However, this guidance, issued more than a decade prior to the 2007 amendments, does not change the statutory requirement that notice be given only at the time a policy is issued, for policies issued after 1977. The Bulletin guidance did not create an obligation for insurers to renotify each customer of the provisions of ORS 746.280 every time a policy that was issued after 1977 was extended or renewed.

Furthermore, the facts of this case do not support plaintiff's theory of a continuing harm. Oregon case law has held that a continuing-tort doctrine applies to the accrual of a claim when there is a series of incidents that individually do not support a claim, but as a whole are "a systemic pattern of conduct that led to a specific injury." *Barrington v. Sandberg*, 164 Or App 292, 297-98, 991 P2d 1071 (1999) (holding the repeated physical abuse of a cadet by a superior officer did not result in a claim for intentional infliction of emotional distress until the cadet first disclosed all of the conduct to a friend and became severely emotionally distressed). The Supreme Court has explained that "at the heart of the continuing tort idea is the concept that recovery is for the cumulative effect of wrongful behavior, not for discrete elements of that conduct." *Davis v. Bostick*, 282 Or 667, 671-72, 580 P2d 544 (1978); *see also*, *BoardMaster Corp.*

requirements to policies issued at different times was a drafting oversight. The possibility of an individual having purchased an auto liability insurance policy prior to 1978 and continuously renewing it until 2012 strikes us as remote. However, if on remand any potential class member is identified who had such a policy, further amendment to the class parameters to include such an individual may be warranted.

*v. Jackson County*, 224 Or App 533, 552-53, 198 P3d 454 (2008) (utility company letter that prompted the disconnection of power was the discrete, harm-producing act that triggered the accrual of the action and began the running of the statute of limitations, and the failure to reconnect the power did not constitute a continuing tort). The conduct at issue here, namely, defendant failing to provide the appropriate notices at the time a policy was issued, was a discrete act, and no continuing harm tolled the statute of limitations.

We turn now to the class representative, Bellshaw. Bellshaw purchased his auto liability insurance policy in 2011. Plaintiff argues that Bellshaw's claim remains timely based on his August 2013 collision and defendant's failure "to fulfill its obligations under ORS 746.290(2)(b)" at that time. However, the obligation under ORS 746.290(2)(b) attaches at the time a policy is issued, not at the time a claim is made under the policy. When the class definition is amended to include only those individuals whose policies were issued on or after June 29, 2012, Bellshaw will no longer be a class member.[19]

## IV.  DUE PROCESS

In its second and third assignments of error, defendant challenges the aggregate monetary award as a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[20] Defendant argues that it did not receive fair notice that its conduct was in violation of the law, because it followed DCBS guidance, and the agency approved its Notice. Defendant further argues that the trial court erred in failing to strike or reduce the ultimate penalty as excessive to the point of constituting a violation of due process.

---

[19]  To the extent that Bellshaw asserted other claims relating to the existence of defendant's Circle of Dependability program or defendant's policies constituting a violation of anti-steering laws, the general judgment that is before us on appeal does not address those claims, and awards Bellshaw the same $100 statutory penalty as the other members of the class based on defendant's violation of ORS 746.290(2)(b). The parties do not raise any arguments regarding the additional relief claimed in the second amended complaint. Whether any other claims by Bellshaw remain to be resolved is an issue for the trial court to determine on remand.

[20]  "No state shall * * * deprive any person of life, liberty, or property, without due process of law[.]" US Const, Amend XIV.

A. *Procedural Background*

The parties initially addressed this issue in their briefing on the cross-motions for summary judgment. In its January 2018 letter opinion granting summary judgment to plaintiff on the merits of defendant's violation of ORS 746.290(2)(b), the court deferred ruling on the due process issue and requested further arguments on that specific point.

Defendant subsequently filed a motion to strike the statutory penalties, on the basis of a due process violation. Briefing from both parties raised additional issues, including regarding a jury trial on certain claims, defendant's motion to decertify the class, and plaintiff's motion to amend the class. In April 2019, the court granted plaintiff's motion to expand the class, and in the same order noted that it was persuaded that a reduction in statutory penalties was warranted, but that it was deferring ruling on defendant's due process argument until after class notice was provided to the newly expanded class.

The court subsequently held a two-day trial on the due process arguments. In June 2019, the court issued its Opinion, Findings of Fact, and Conclusions of Law on the issue, finding that the statutory penalty of $100 per claim did not violate the Due Process Clause as applied to the facts in the case.

B. *Analysis*

Given our ruling on the class parameters, a complete ruling as to the due process issues is not appropriate in this posture. However, because we conclude that the trial court's resolution of the issues was erroneous in part, we address the issues given that they will require resolution on remand.

Whether an award constitutes a violation of due process is a question of law. *St. Louis, I. Mt. & So. Ry. Co. v. Williams*, 251 US 63, 40 S Ct 71, 64 L Ed 2d 139 (1919); *Wakefield v. ViSalus, Inc.*, 51 F4th 1109, 1120 (9th Cir 2022), *cert den*, ___ US ___, 143 S Ct 1756 (2023).

1.  *Notice*

Defendant argues that the imposition of more than $26 million in statutory penalties violates its procedural due process rights because at all times it was in compliance with agency guidance from DCBS and the language included in its Notice was approved by the director, as required by the statute. Defendant asserts that it did not have fair notice that the 2007 amendments to ORS 746.280 changed the notice requirements, subject to a $100 fine per customer, because the agency continued to approve its notices even after the amendments went into effect. Plaintiff asserts that the agency's mistake in approving defendant's insufficient notice does not shield defendant from liability. We agree with plaintiff.

Due process requires fair notice of the law and of the severity of the penalty that may be imposed. *Goddard v. Farmers Ins. Co.*, 344 Or 232, 251, 179 P3d 645 (2008). In the wake of the 2007 amendments to ORS 746.280, defendant implemented new policies and procedures for claims processing to comply with the new notice requirements at the time a claim was filed; however, it made no changes to the notices provided pursuant to ORS 746.290(2)(b). As was found by the trial court, defendant was aware of the 2007 amendments and "consciously ignored its exposure to [the] penalty for years." DCBS's guidance in "Form 440-3615 - Standards for Motor Vehicle Forms Filing" instructs insurers that the checklist standards are summaries only, and "review of the entire statute or rule may be necessary." The fact that defendant and DCBS misinterpreted the extent of the impact of the amendments does not relieve defendant of responsibility for complying with the law. *See, e.g.*, *Tidewater Barge Lines, Inc. v. EQC*, 159 Or App 296, 304-05, 974 P2d 807 (1999), *appeal dismissed*, 330 Or 253 (2000) (holding that statutory procedural information was "a matter of statute and thus of public knowledge," the agency did not have authority to bind the government to a different procedure, and the agency's provision of incorrect information was not a violation of due process demanding equitable estoppel). We further note that ORS 746.300 does not relieve from liability an insurer who follows the guidance of the agency.

In support of its argument, defendant points to numerous federal cases where courts nullified agency action when the agencies changed their interpretation of a statute and then took enforcement action against an entity that was in compliance with the earlier policy. However, those cases do not offer guidance for the situation in this case. No agency action was taken against defendant, and no agency changed its policy interpretation without providing notice.[21] Therefore, the cases defendant cites are not analogous to the situation before us. Rather, this is a matter of statutory interpretation clarifying the meaning of the law, something this and other courts engage in regularly.

We conclude that defendant had fair notice of the law and DCBS's approval of the language contained in the Notice does not render the award of statutory penalties a violation of defendant's due process rights.

2.   *Constitutionality of the amount of statutory damages*

Defendant additionally asserts that, under federal case law, the aggregate statutory penalty of over $26 million is grossly excessive, and thus constitutes an arbitrary deprivation of property, in violation of due process. Plaintiff argues that defendant's argument applies federal case law that relates only to punitive damages, and not statutory damages, and that, under the appropriate framework, the aggregate award is not a violation of due process.

As an initial matter, we recognize that, with the amendment of the class definition as discussed above, the final aggregate award will be significantly reduced, based on the narrowing of the class parameters and the exclusion of more than 150,000 present members of the class. Any specific assessment of the constitutionality of the $26 million award would be *dicta*. However, defendant initially challenged the penalty as a due process violation when the class parameters included only 96,436 individuals. Therefore, the issue is likely to arise on remand, and we provide the following analysis as guidance for the trial court to implement on remand. *See, e.g.*, *Westwood Construction Co. v. Hallmark*

---

[21] This action is not a challenge to any rulemaking or other administrative actions under the APA.

*Inns*, 182 Or App 624, 639, 50 P3d 238, *rev den*, 335 Or 42, 57 P3d 581 (2002) ("Because the issue is likely to arise on remand regardless of which party prevails, we reach and resolve it.").

The standards for assessing the constitutionality of a statutory award are set forth in *Williams*.[22] The Court held that a statutory penalty is to be considered "with due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to [the law]." *Williams*, 251 US at 67. The Court also acknowledged the "wide latitude of discretion" that states possess and the important government powers inherent in the legislature, holding that a legislatively enacted statutory penalty will only transcend due process "where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Id.* at 66-67.

*Williams* only assessed the due process implications of an individual statutory penalty. *Id.* at 64. In a recent case from the Ninth Circuit, that court extended *Williams* and held that due process concerns may limit aggregate statutory damage awards in a class action, under extreme circumstances. *Wakefield*, 51 F4th at 1121.[23] The court discussed the rationale behind extending *Williams* to aggregated awards, analogizing to punitive damages cases, and noting that "where statutory damages no longer

---

[22] Defendant primarily relies on *BMW of North America, Inc. v. Gore*, 517 US 559, 116 S Ct 1589, 134 L Ed 2d 809 (1996), in arguing that the total award violated due process. However, *Gore* and the cases following it relate to punitive damages, and not statutory damages. In its Memorandum of Additional Authorities, defendant asserts that a recent Ninth Circuit case, *Wakefield*, 51 F4th 1109, directly relates to these assignments of error. *Wakefield* makes clear that *Williams* is applicable to the assessment of statutory damages, not *Gore*. *Wakefield*, 51 F4th at 1120-21.

[23] At least one other circuit court has held the same. *See Golan v. FreeEats.com, Inc.*, 930 F3d 950, 962-63 (8th Cir 2019) (reviewing an aggregate $1.6 billion award of individual $500 penalties in a class action for due process under *Williams*). Another court has indicated the possibility of aggregate statutory damages violating due process. *See Parker v. Time Warner Entertainment Co., L.P.*, 331 F3d 13, 22 (2d Cir 2003) (indicating in *dicta* that the aggregation of statutory damages could distort the purpose of statutory damages and class action suits, inducing unfair settlements, and that in a "sufficiently serious case" a due process challenge could be used "to nullify that effect and reduce the aggregate damage award").

serve purely compensatory or deterrence goals, consider-
ation of an award's reasonableness and proportionality to
the violation and injury takes on heightened constitutional
importance." *Id.* at 1122-23. The court went on to discuss
a number of factors that can contribute to the assessment
of whether an aggregate award is constitutional, including
considering "the magnitude of the aggregated award in rela-
tion to the statute's goals of compensation, deterrence, and
punishment and to the proscribed conduct." *Id.* at 1123. The
parties agree that *Wakefield* is relevant to this case and do
not dispute that the aggregate award is subject to a due pro-
cess analysis. Though we are not bound by federal circuit
court case law, absent any argument to the contrary we are
persuaded that the rationale set forth in *Wakefield* is appli-
cable in this matter.

     In reviewing the trial court's ruling on this issue,
it is not clear to us whether or how the court considered
the aggregate award. Though the arguments from defen-
dant below focused on the total amount awarded, and the
trial court purported to consider the due process implica-
tions of the $100 statutory penalty "as applied" in the mat-
ter, portions of the trial court's rationale suggest that it did
not believe it had the authority to alter the final aggregate
award:

> "The penalty contained in ORS 746.300 is clear. The
> code is to be liberally construed to protect the consumer.
> There is no ambiguity and the court's role is to enforce the
> penalty. The courts, in the construction of the statutes, are
> simply to ascertain and declare what the text and substance
> of the law is. ORS 174.010. The courts may not rewrite the
> law even if the legislature is suspected of error. The Court
> cannot rewrite ORS 746.300 to read 'actual damages or a
> penalty to be set by the court but not to exceed $100.' If
> the legislature had meant for the Court to have discretion,
> it would have said so. The legislature did not provide the
> court with a range of judicial discretion. They certainly
> could have provided for judicial review as they did in ORS
> 31.730, in reviewing jury awards of punitive damages, but
> they did not. There is very little case law dealing with stat-
> utory penalties and while I earlier indicated that I believed
> a reduction may be warranted, it would have been better
> stated that under [*Scharfstein v. BP West Coast Products,*

*LLC*, 292 Or App 69, 423 P3d 757, *rev den*, 363 Or 815 (2018), *cert dismissed*, 140 S Ct 16, 204 L Ed 2d 1170 (2019)], a due process hearing was warranted given the facts of this case.

"Certainly, there would be no question that a $100.00 penalty paid to a single claimant is not severe. The legislators had the opportunity to increase the penalty in 2007 when the law was amended and elected not to do so. The penalty only becomes severe when viewed in the light of a large class. Changes in the Class Action Statutes have made this case and others like it possible and thus there is a need to review the statutory penalties in light of larger class actions. Other courts have rejected the argument that aggregation automatically creates a Due Process problem and I agree."

The court went on in its conclusions of law to state, "The legislature provided the court with no discretion to reduce the $100 statutory liquidated damages penalty contained in ORS 746.300 and for that reason the court awards the legislatively determined penalty of $100 without reduction." The court also found that "[a]ny proper analysis under either *Gore* or *Williams* also supports that the $100 statutory penalty does not violate due process."

From the court's opinion, it is unclear how it applied the *Williams* analysis to the aggregate award. We note that the trial court made several findings of fact that would appear to weigh in defendant's favor when analyzing the award under *Williams* and *Wakefield*, including that defendant did not intend to violate ORS 746.290(2)(b), defendant did not act reprehensibly, defendant's conduct did not involve intentional malice, trickery, or deceit, and plaintiff submitted no evidence demonstrating any harm to any class member resulting from the noncompliant notices.[24] The trial court further concluded that defendant's violation was a technical one and noted that defendant relied on language approved by DCBS and that DCBS had taken no civil enforcement actions against defendant or any other insurers in connection with the notice violation.

_____

[24] Indeed, it is likely that many of the class members, like plaintiff, never read the Notice.

On remand, the trial court shall reassess the constitutionality of the aggregate statutory penalties awarded, using the framework set forth in *Williams* and as further explained in *Wakefield*.

## V.   CONCLUSION

We conclude that defendant's Notice did not comply with the requirements of ORS 746.290(2)(b). The trial court erred in expanding the class to include claims that were time barred. The aggregate statutory penalty award, once recalculated on remand, should be assessed for whether its imposition complies with due process.

Reversed and remanded.